726 So.2d 775 (1998)
OKEECHOBEE HEALTH CARE and Associated Industries Insurance Company, Inc., Appellants,
v.
Ann COLLINS, Appellee.
No. 97-3362
District Court of Appeal of Florida, First District.
October 7, 1998.
Mary Ann Stiles, Rayford H. Taylor, and Karen M. Smith of Stiles, Taylor, Grace & Smith, P.A., Tallahassee, for Appellants.
Barbara B. Wagner, Deerfield Beach, and Debra H. Pierce, Fort Pierce, for Appellee.
BENTON, Judge.
Ann Collins was injured in an accident arising out of her employment on January 17, 1994. On this account, the judge of compensation claims ordered temporary partial disability benefits for one period and temporary total disability benefits for another period. Her employer, Okeechobee Health Care, and its workers' compensation insurance carrier, Associated Industries Insurance Co., Inc., appeal this order, which awarded Ms. Collins more than 104 weeks of temporary disability benefits altogether. They contend that temporary disability benefits are capped at 104 weeks. We agree, reverse on that basis, and remand for entry of an order that does not award temporary disability benefits for periods aggregating more than 104 weeks.
A covered employee who is temporarily unable to work at all because of an injury arising out of his or her employment is eligible for temporary total disability benefits. Section 440.15, Florida Statutes (Supp. 1994), provides:
(2) TEMPORARY TOTAL DISABILITY.
(a) In case of disability total in character but temporary in quality, 66 2/3 percent of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed 104 weeks except as provided in this subsection.... Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker's permanent impairment shall be determined. *776 A covered employee whose ability to work is temporarily diminishedbut not extinguished altogetherbecause of an injury arising out of his or her employment is eligible for temporary partial disability benefits, depending on the extent of any diminution in wages. Section 440.15, Florida Statutes (Supp.1994), provides:
(4) TEMPORARY PARTIAL DISABILITY.
(a) In case of temporary partial disability, compensation shall be equal to 80 percent of the difference between 80 percent of the employee's average weekly wage and the salary, wages, and other remuneration the employee is able to earn, as compared weekly; however, the weekly benefits may not exceed an amount equal to 66 2/3 percent of the employee's average weekly wage at the time of injury....
(b) Such benefits shall be paid during the continuance of such disability, not to exceed a period of 104 weeks, as provided by this subsection and subsection (2). Once the injured employee reaches the maximum number of weeks, temporary disability benefits cease and the injured worker's permanent impairment must be determined.
(Emphasis supplied.) Once eligibility for temporary disability benefits ends, eligibility for permanent impairment benefits or permanent total disability benefits may arise under other provisions of section 440.15, Florida Statutes (Supp.1994).
To ascertain what limit the statute places on temporary disability benefits, we turn first to the plain language of section 440.15, Florida Statutes (Supp.1994). See, e.g., City of Miami Beach v. Galbut, 626 So.2d 192 (Fla.1993). But other rules of statutory construction also apply.[1]
Especially when enacted into law simultaneously, subsections of the same statute must be construed in pari materia. See, e.g., Wiggins v. B & L Servs., Inc., 701 So.2d 570 (Fla. 1st DCA 1997). The language in subsection (2) "not to exceed 104 weeks except as provided in this subsection" is properly interpretednot in isolation as authorizing 104 weeks of temporary total disability benefits, regardless of other benefitsbut with regard to, and in keeping with, the rest of section 440.15, Florida Statutes (Supp. 1994).
Reading subsection (2) in conjunction with subsubsection (4)(b), which provides that "benefits shall be paid during the continuance of such disability, not to exceed a period of 104 weeks, as provided by this subsection and subsection (2)," requires the conclusion that the Legislature intended to limit temporary disability benefits, whether payable under subsection (2) or under subsection (4), to 104 weeks. Until January 1, 1994, subsection (2) limited the maximum period of temporary *777 total disability benefits to 260 weeks, and subsection (4) limited the maximum period of temporary partial disability benefits to 260 weeks, creating the possibility of a combined entitlement to temporary disability benefits for 520 weeks. In contradistinction to the amended statute,[2] however, former subsection (4) made no reference to former subsection (2). See Carlile v. Game and Fresh Water Fish Comm'n, 354 So.2d 362, 364 (Fla.1977) ("[W]hen a statute is amended, it is presumed that the Legislature intended it to have a meaning different from that accorded to it before the amendment.").
The language in subsection (4) must, moreover, be given effect in its entirety, if possible. "Statutory interpretations that render statutory provisions superfluous `are, and should be, disfavored.'" Johnson v. Feder, 485 So.2d 409, 411 (Fla.1986) (quoting Patagonia Corp. v. Board of Governors of the Fed. Reserve Sys., 517 F.2d 803, 813 (9th Cir.1975)). See Unruh v. State, 669 So.2d 242, 245 (Fla.1996); City of North Miami v. Miami Herald Publ'g Co., 468 So.2d 218, 219-20 (Fla.1985). Interpreting the statute so as to entitle a claimant both to 104 weeks of temporary total disability benefits and to 104 weeks of temporary partial disability benefits would render the phrase in subsubsection (4)(b) "as provided by this subsection and subsection (2)" mere surplusage. On the other hand, the interpretation urged by the appellants gives meaning to the language "as provided by this subsection and subsection (2)."
In addition, a limitation of 104 weeks on temporary disability benefits meshes with the statutory scheme for determining permanent impairment ratings. Enacted simultaneously with the new limit on temporary disability benefits, section 440.15(3)(a)4., Florida Statutes (Supp.1994), provides:
After the employee has been certified by a doctor as having reached maximum medical improvement or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating, using the impairment schedule referred to in subparagraph 2.[[3]]
(Emphasis supplied.) The emphasized language does not distinguish between temporary total disability benefits and temporary partial disability benefits in relation to the "expiration of temporary benefits." The provision continues:
If the employee has not been certified as having reached maximum medical improvement before the expiration of 102 weeks after the date temporary total disability benefits begin to accrue, the carrier shall notify the treating doctor of the requirements of this section.
§ 440.15(3)(a)4., Fla. Stat. (Supp.1994). This provision apparently rests on the assumption that 104 weeks of temporary total disability benefits exhausts entitlement to temporary benefits of any kind.[4] Taking subsections (2) and (4) together, and in pari materia with subparagraph 440.15(3)(a)4., Florida Statutes (Supp.1994), the statute authorizes no more than 104 weeks of temporary disability benefits, whether temporary disability benefits are partial, total, or a combination of the two.
The Department of Labor and Employment Security, Division of Workers' Compensation has construed the statute in *778 the same way, as reflected by Florida Administrative Code Rule 38F-3.0191, Temporary Disability Benefits (Dates of Accident on or After January 1, 1994), which provides:
(1) Temporary disability benefits include temporary total disability benefits and temporary partial disability benefits and are payable for a maximum of 104 weeks. An employee's eligibility for temporary disability benefits ceases after the employee has received 104 weeks of temporary total disability benefits paid pursuant to s. 440.15(2)(a) F.S., or after the employee has received 104 weeks of temporary partial disability benefits paid pursuant to s. 440.15(4) F.S., or after the employee has received 104 weeks of any combination of these two benefits.
A reviewing court properly defers on questions of statutory interpretation to the agency to which the Legislature has given the responsibility and authority to administer the statute, unless the interpretation is clearly erroneous.
"[A]n agency's interpretation of a statute it is charged with enforcing is entitled to great deference." Ameristeel Corp. v. Clark, 691 So.2d 473, 477 (Fla.1997). Accord Morris v. Division of Retirement, 696 So.2d 380 (Fla. 1st DCA 1997); Braman Cadillac, Inc. v. Department of Highway Safety and Motor Vehicles, 584 So.2d 1047, 1050 (Fla. 1st DCA 1991); PAC for Equality v. Department of State, Fla. Elections Comm'n, 542 So.2d 459 (Fla. 2d DCA 1989); PW Ventures, Inc. v. Nichols, 533 So.2d 281 (Fla.1988); Shell Harbor Group, Inc. v. Department of Bus. Regulation, Div. of Alcoholic Beverages and Tobacco, 487 So.2d 1141 (Fla. 1st DCA 1986); Department of Prof'l Regulation, Bd. of Med. Exam'rs v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984).
Ring Power Corp. v. Campbell, 697 So.2d 203, 205 (Fla. 1st DCA 1997). The present case is a far cry from Willette v. Air Products, 700 So.2d 397, 399 (Fla. 1st DCA 1997), where we rejected an agency's statutory interpretation as "unmistakably at odds with the clear statutory language." The statutory interpretation embodied in the agency's rule here is dictated by established canons of statutory construction.
Accordingly, we reverse the order under review and remand with directions that the judge of compensation claims limit any award of temporary disability benefits on remand, whether temporary total disability benefits, temporary partial disability benefits, or any combination thereof, to a maximum of 104 weeks.
VAN NORTWICK and PADOVANO, JJ., concur.
NOTES
[1] We reject Ms. Collins' argument that any ambiguity in the statute must be construed in her favor. By resolving statutory ambiguity in favor of employees, when construing the Workers' Compensation Act as it existed before January 1, 1994, we have followed the teaching of Daniel v. Holmes Lumber Company, 490 So.2d 1252, 1256 (Fla.1986) ("Florida's workers' compensation laws are remedial in nature and the courts should resolve any doubts as to statutory construction in favor of providing benefits to injured workers."). See, e.g., Gates Energy Prods. v. Wheeler, 637 So.2d 1000 (Fla. 1st DCA 1994). The Florida Supreme Court recently quoted language from Daniel with approval in Broward v. Jacksonville Medical Center, 690 So.2d 589 (Fla. 1997), in deciding a case that arose under the 1993 statute.

But, by enacting chapter 93-415, section 1 at 68, Laws of Florida, now codified as section 440.015, Florida Statutes (1997), the Legislature has placed a different gloss on the Workers' Compensation Law, declaring
that disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer.
(Amending language underlined.) We acknowledged this change in the law in Orange County MIS Department v. Hak, 710 So.2d 998, 999 n. 1 (Fla. 1st DCA 1998), and have implicitly applied the amended provision in other cases construing ambiguous statutory language. See Brannon v. Tampa Tribune, 711 So.2d 97 (Fla. 1st DCA 1998); City of Pensacola Firefighters v. Oswald 710 So.2d 95 (Fla. 1st DCA 1998). Here, too, we adhere to "the basic principles of statutory construction," which neither require nor permit that all ambiguities be resolved "liberally in favor of either employee or employer." § 440.015, Fla. Stat. (Supp.1994).
[2] Legislative history surrounding the 1993 amendments is ambiguous. See Staff of Fla. Senate Comm. on Commerce, Florida Workers' Compensation Reform Summary 2 (1993). A contemporaneous law review article states that "the maximum number of weeks an injured employee could collect temporary partial and temporary total benefits was reduced from 260 weeks to 104 weeks." Timothy A. Watson & Michael J. Valen, A Historic Review of Workers' Compensation Reform in Florida, 21 Fla. St. U.L.Rev. 501, 520 (1993).
[3] The "impairment schedule referred to in subparagraph 2" is a "uniform permanent impairment rating schedule." § 440.15(3)(a)2., Fla. Stat. (Supp.1994).
[4] "An employee's entitlement to impairment income benefits begins the day after the employee reaches maximum medical improvement or the expiration of temporary benefits, whichever occurs earlier ...." § 440.15(3)(a)3., Fla. Stat. (Supp.1994). See City of Pensacola Firefighters v. Oswald, 710 So.2d 95 (Fla. 1st DCA 1998). Until maximum medical improvement or until the expiration of all temporary benefits is imminent, assigning a rating serves no purpose under the statute.